IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LISA SMITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>IVM SOLUTIONS, L.L.C., )<br>*doing business as Roadside Inc.*, )<br>)<br>Defendant. ) | CASE NO. 1:21-cv-162-RAH<br>[WO] |

# **MEMORANDUM OPINION AND ORDER**
## INTRODUCTION

There has long been tension between how employers monetarily value their employees and what employees believe they are worth. Federal law offers some protections to employees by prohibiting pay discrepancies based on protected characteristics such as gender. But the law is not a moral ceiling; it is a floor providing minimum requirements for employment decisions. Thus, so long as an employer's reason for a pay discrepancy between a female and male employee is lawful, it is not the court's role to second-guess an entity's business decision merely because an employee believes her salary does not reflect her value.

This pay discrimination case arises out of Defendant IVM Solutions, LLC's (IVM) decision to pay certain employees more than others. In 2021, Plaintiff Lisa Smith filed this lawsuit against IVM claiming gender discrimination in violation of

1

Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*; and the Equal Pay Act of 1963 (EPA), as amended, 29 U.S.C. § 206(d). Discovery now at an end, IVM has moved for summary judgment on both claims. With IVM's motion having been fully briefed and thus ripe for discussion, for the reasons more fully set forth below, this Court GRANTS the motion.

## JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Smith's federal causes of action. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

## STANDARD OF REVIEW

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on "the pleadings, the discovery and disclosure materials on file, and any affidavits." FED. R. CIV. P. 56(a), (c). A district court must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *E.g.*, *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). The court also cannot resolve the merits of properly disputed factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact is or is not genuinely disputed can support such a statement by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see also Celotex*, 477 U.S. at 323, 325. Alternatively, the movant can do one of two things. It can contend "that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1)(B); *see also Fuller v. SL Alabama, LLC*, 56 F. Supp. 3d 1232, 1236 (M.D. Ala. 2014). Or, if it will not bear the burden of production at trial, it can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. FED. R. CIV. P. 56(c)(1)(B).

If the movant meets its burden, the burden shifts to the nonmoving party to establish that a genuine dispute material to each of its claims for relief exists. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence

of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

In applying Rule 56, a court must heed two definitions. Applicable substantive law identifies those facts that are material to the dispute. *Id.* at 248. As a matter of course, disputed facts that are not material "will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247–48. Meanwhile, a dispute is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 249–50. Essentially, a genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs., Inc*., 276 F.3d 1275, 1279 (11th Cir. 2001).

## BACKGROUND

### A. IVM Solutions, LLC

From December 2011 to April 2017, IVM was exclusively a roadway herbicide application provider. (Doc. 25-2 at 2–3.) IVM did not initially fabricate physical spray systems, but rather utilized spray systems manufactured and assembled by another company, NorStar Industries, Inc. (NorStar). (*Id*. at 3.) In 2017, IVM entered the market of manufacturing and installing these spray systems and hired experienced employees from NorStar to advance this effort. (*Id*.) To entice them to leave NorStar and work for IVM, IVM's manager, Corey Craig, offered to

4

add fifty cents to their hourly rates of pay at NorStar. (*Id.* at 4.) Several NorStar employees accepted Craig's offer and moved to IVM to work in the warehouse. (*See id.* at 3–4.)

### B. Lisa Smith

Smith was formerly employed by IVM as a warehouse employee and later a parts manager. Prior to her time at IVM, Smith had a diverse employment history: accounts receivable for a transportation company; receptionist at a property management company; operations management at an animal kennel; warehouse laborer for an industrial parts supplier, where she processed incoming and outgoing freight and deliveries and took sales orders; house cleaner; manager at a Subway fast food restaurant; seasonal worker at Fed-Ex; and temporary town clerk for a water department. (Doc. 25-5 at 25–32, 36–40, 44–46, 50–53, 55–57.) She never worked in herbicide application or spray system manufacturing.

At her husband's urging, IVM hired Smith in October 2018 part-time at $12.00 per hour to assemble spray heads and other parts.[1] (Doc. 25-1 at 71; Doc. 25-4 at 2; Doc. 25-5 at 87–89, 91.) Several months later, in February 2019, she was moved to a full-time position in the warehouse at an hourly rate of $13.00. (Doc.

---

[1] The parties dispute whether Smith was initially hired as a part-time employee. Regardless, both parties agree that Smith started out working for IVM on a part-time basis. (*See* Doc. 25-1 at 71; Doc. 25-5 at 89.)

25-1 at 73–74; Doc. 25-4 at 2.) Smith's primary responsibility as a warehouse employee was to assemble spray heads while also assisting with other tasks. (Doc. 25-5 at 118.)

In April or May 2019, Smith was promoted to a parts manager position after the previous parts manager was terminated. (Doc. 25-1 at 93; Doc. 25-5 at 119–20.) Smith's hourly pay was increased from $13.00 to $15.00. (Doc. 25-4 at 2; Doc. 25-5 at 119.) As a parts manager, Smith's responsibilities included ordering parts, processing deliveries, maintaining inventory, and taking orders over the phone. (Doc. 25-5 at 115.) In September 2019, Smith received a five percent raise, bringing her hourly rate to $15.75. (Doc. 25-4 at 2; Doc. 25-5 at 163.)

After expressing displeasure with management about the amount of her raise, Smith separated from IVM in October 2019.[2] (Doc. 25-1 at 126; Doc. 25-4 at 2; Doc 25-5 at 163–64, 177.)

**C. Smith's Male Comparators**

In her response to IVM's summary judgment motion, Smith identifies the following male comparators:

---

[2] Since Smith does not assert a Title VII claim in her Complaint concerning her separation from IVM, the Court will not further address Smith's argument in her summary judgment brief that she has raised a termination claim.

1. <u>Addison Latham:</u> IVM hired Latham as a warehouse employee in September 2018. (Doc. 25-4 at 2.) Latham had electrical experience from his previous employment at a stereo shop and in construction. (Doc. 25-1 at 79.) IVM hired Latham because it "desperately needed" someone with his "great deal of experience in electrical components" with respect to vehicles. (*Id.*) Latham's warehouse responsibilities at IVM included installing wiring harnesses on IVM's trucks, (Doc. 25-5 at 99), and performing tasks that no one else in the warehouse undertook, such as painting all the truck bodies and applying "Line-X" to the trucks, (Doc. 25-1 at 134). Latham's starting hourly pay was $14.00. (Doc. 25-4 at 2.) In February 2019, he received a raise to $15.50 an hour. (*Id.*)

2. <u>Eddie Farmer, Jr.:</u> IVM hired Farmer away from NorStar in April 2017 as a warehouse employee after IVM offered him a fifty-cent-per-hour raise. (Doc. 25-2 at 3–4; Doc. 25-4 at 2.) Since Farmer was paid $14.50 per hour by NorStar, his starting pay rate with IVM was $15.00 per hour. (Doc. 25-2 at 3–4.) In October 2017, Farmer was promoted to parts manager and received a raise to $17.00 per hour. (Doc. 25-2 at 4; Doc. 25-4 at 2.) Farmer subsequently received raises in April 2018 to $17.85 per hour and in February 2019 to $19.81 per hour. (Doc. 25-4 at 2.) Farmer served as a parts manager for two years until he was fired by IVM in April 2019. (Doc. 25-1 at 60–61; Doc. 25-4 at 2.)

**DISCUSSION**

Smith's Complaint raises claims under Title VII and the EPA concerning her compensation. IVM seeks summary judgment on both. The Court will first address Smith's EPA claim and then her Title VII pay discrimination claim.

**A. The EPA Claim**

The EPA prohibits employers from discriminating on the basis of sex by paying employees of different sexes different rates of pay for the same work. 29 U.S.C. § 206(d)(1). To establish a prima facie case under the EPA, a plaintiff must show that her employer "pays different wages to employees of opposite sexes for equal work on jobs," the performance of which requires "equal skill, effort, and responsibility, and which are performed under similar working conditions." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974), and 29 U.S.C. § 206(d)(1)). The initial burden to demonstrate comparability is "fairly strict." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992). Although the jobs compared need not be identical, a plaintiff must demonstrate "that she performed substantially similar work for less pay." *Id.*; *see also Waters v. Turner, Wood & Smith Ins. Agency, Inc.,* 874 F.2d 797, 799 (11th Cir. 1989) ("The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high.").

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to prove the pay differential is justified by an exception to the EPA; here, "based on any other factor other than sex." *Miranda*, 975 F.2d at 1532–33 (quoting *Corning Glass Works,* 417 U.S. at 196). Because a prima facie case does not require a showing of an employer's discriminatory intent, the EPA "prescribes a form of strict liability." *Id.* at 1533. Thus, if Smith can establish a prima facie case of pay disparity between substantially similar work and IVM fails to prove a "factor other than sex" is responsible for the differential, then Smith can prevail. *See id.* (citing *Mitchell v. Jefferson Cnty. Bd. of Educ.*, 936 F.2d 539 (11th Cir. 1991)).

IVM first argues that Smith cannot meet her prima facie burden for her EPA claim[3] because Smith cannot point to any pay differentials as a warehouse employee since IVM paid some male warehouse employees as much as or less than Smith. But the pertinent inquiry is not whether IVM paid some male employees the same or less than Smith, but instead whether Smith can show a male warehouse employee was paid more for equal work. *See Irby*, 44 F.3d at 954.

To establish her prima facie case, Smith points to Latham as a comparator, asserting that they both "performed the same job duties" and that "[t]here were no job duties that Addison Latham did [that Smith] did not do." (Doc. 30 at 9 (citing

---

[3] Smith does not address IVM's argument that she cannot identify a proper male comparator when she worked as a part-time spray-head assembler. As such, any claim based on her job as a part-time spray-head assembler is deemed to have been abandoned.

9

Doc. 25-5 at 216–17).) Smith's conclusory argument is not supported by her own testimony and admissions.

First, Smith admitted in her deposition that as a warehouse employee her job responsibilities consisted primarily of assembling spray heads. (Doc. 25-5 at 111, 118; Doc. 25-6 at 2.) Smith also admitted that she was the only employee whose primary job responsibilities consisted of assembling spray heads. (Doc. 25-5 at 104; Doc. 25-6 at 2.)

Second, in her deposition, Smith testified that she and Latham did not have equal job duties and responsibilities in the warehouse. (Doc. 25-5 at 111–14.) Specifically, Smith testified that although she assisted with assembling wiring harnesses, Latham was responsible for installing these wiring harnesses in the trucks. (Doc. 25-5 at 92, 99; *id.* at 112 ("Depends on what you mean identical. . . . [W]hich one is more important? The one who assembled the wiring harness? Or the one that takes it over there and hooks it up to all the buttons?").) This is consistent with Craig's testimony that he hired Latham because IVM needed someone with "experience in electrical components." (Doc. 25-1 at 79.) And Smith does not assert that, like Latham, she too painted and applied "Line-X" to the trucks. As such, Smith has not met her high burden of showing that her and Latham's warehouse jobs were equal in terms of skill, effort, and responsibility. *See Waters*, 874 F.2d at 799.

With respect to the parts manager position, Smith points to Farmer — a former employee of IVM's competitor, NorStar — as a comparator. (Doc. 30 at 13.) Since IVM does not challenge Farmer as a comparator, the burden shifts to IVM to justify the wage differential under one of the four exceptions of the Equal Pay Act. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003) (citing 29 U.S.C. § 206(d)(1)). This is an affirmative defense, and a defendant's burden of proof is "heavy" in the sense that the employer "must demonstrate that 'the factor of sex provided *no basis* for the wage differential.'" *Id.* (quoting *Irby*, 44 F.3d at 954).

To that end, IVM submits evidence that the pay differential between Smith and Farmer was justified based on their differing prior employment experience within the herbicide application industry and their prior pay. Farmer had "knowledge of the exact same parts as he was to oversee the ordering and inventorying of as parts manager" based on his years of "experience [in] the niche market of assembling and installing spray equipment to trucks for herbicide application." (Doc. 26 at 37.) In contrast, Smith had only worked in the herbicide application industry for a few months at IVM before being promoted to parts manager, and IVM did not consider Smith's prior work experience with other employers to be comparable to Farmer's experience with NorStar. (*See id.*) Additionally, Farmer's hourly pay rate prior to becoming parts manager was higher than Smith's hourly pay, and IVM attributes this discrepancy to the financial incentive offer that it made to Farmer to induce him

to leave NorStar. "[P]rior pay plus experience establishes an affirmative defense under the EPA." *White v. ThyssenKrupp Steel USA, LLC*, 743 F. Supp. 2d 1340, 1354 (S.D. Ala. 2010); *see Irby*, 44 F.3d at 955 ("While an employer may not overcome the burden of proof on the affirmative defense of relying on 'any other factor other than sex' by resting on prior pay alone . . . there is no prohibition on utilizing prior pay as part of a mixed-motive, such as prior pay *and* more experience." (citation omitted)). Thus, IVM has satisfied its burden in showing that sex provided no basis for the wage differential between Smith and Farmer.

Smith bears the burden to rebut this explanation by showing with affirmative evidence that the reason is pretextual. *See Steger*, 318 F.3d at 1078 (citing *Irby*, 44 F.3d at 954). If a plaintiff's rebuttal is sufficient to create an inference of pretext, a material issue exists that must be resolved at trial. *Irby*, 44 F.3d at 954. On this burden, Smith does not directly assert IVM's stated justification is pretextual aside from a conclusory sentence in her brief opposing summary judgment. In fact, Smith largely ignores the facts surrounding Farmer's qualifications. Rather, Smith disputes IVM's assertion that when Smith was promoted, "Craig knew she had experience . . . [but] did not consider her experience . . . to be comparable to someone with experience at NorStar, because the two companies were not involved in comparable markets." (Doc. 26 at 15.) Specifically, Smith contends that Craig did not have knowledge of her prior work experience because "he did not inquire into such, so he

12

is unable to opine as to its relevance." (Doc. 30 at 6.) But disputing whether Craig knew the specifics of Smith's prior work history when determining her pay as parts manager does not give rise to an inference of pretext, especially when nothing in the record suggests IVM was motivated by discriminatory animus. Indeed, even though Craig did not discuss Smith's prior work history directly with her, the record shows Craig knew the general nature of Smith's prior employment through discussions with her husband, who urged Craig to hire Smith at IVM in the first place. (*See* Doc. 25-1 at 93–94; Doc. 25-7 at 42–43.) And even though Smith believes her experience was relevant, Smith cannot avoid the significance placed on Farmer's experience in the same industry with a competitor. Simply put, Smith cannot establish pretext by merely "quarrelling with the wisdom" of IVM's justification in valuing Farmer's industry experience with a competitor higher than her non-industry experience. *See Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("[T]he employee cannot succeed [in rebutting the proffered nondiscriminatory reason] by simply quarreling with the wisdom of that reason.").

In sum, the Court finds that Smith has failed to meet her burden of showing an inference of pretext to survive summary judgment on her EPA claim. *See Irby*, 44 F.3d at 954.

### B. The Title VII Claim

Title VII prohibits an employer from discriminating against any individual with respect to compensation on the basis of sex. 42 U.S.C. § 2000e-2(a). To survive summary judgment, Smith "must present evidence of intentional discrimination sufficient for a jury to rule in her favor," which she can do under the *McDonnell Douglas* burden-shifting framework. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 (11th Cir. 2019). Under the *McDonnell Douglas* framework, Smith bears the burden of establishing a prima facie case of discrimination by showing that she (1) is a member of a protected class; (2) was qualified for her job; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who are not members of the protected class. *Id.* at 1220–21; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Disparate pay is an adverse employment action under Title VII. *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1364 (11th Cir. 2018).

While wage discrimination is forbidden under both Title VII and the EPA, it is easier in some respects to establish a prima facie case under Title VII than under the EPA, since under Title VII, a plaintiff is not required to meet the exacting burden of showing that she and a comparator employee have substantially equal jobs. *See Miranda*, 975 F.2d at 1526. But the plaintiff must show that she and the alleged comparator employees are "similarly situated in all material respects." *Lewis*, 918

14

F.3d at 1218. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), *abrogated on other grounds by Lewis*, 918 F.3d at 1224–25.

When determining whether an individual is a proper comparator, federal courts can consider a number of factors, such as the length of time an individual has worked for the employer, the individual's expertise, and the similarity of tasks and responsibilities they perform. *See Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008); *Davis v. Dunn Constr. Co.*, 872 F. Supp. 2d 1291, 1310 (N.D. Ala. 2012).

Like with the EPA claim, IVM argues Smith cannot meet her prima facie burden of presenting a similarly situated male comparator for her warehouse position. And as with her EPA claim, Smith points to Latham as a comparator. Yet even under Title VII's less demanding burden, the Court agrees with IVM that Latham is not a proper comparator for the same reasons discussed as to Smith's EPA claim. That is, they had different primary responsibilities as warehouse employees, different prior employment experience, and different expertise.

With respect to the parts manager position, IVM disputes that Farmer and Smith are similarly situated given the differences in their work histories and expertise. (*See* Doc. 32 at 5.)  The Court however will assume without deciding that Farmer is a proper comparator for Smith's Title VII claim.  Therefore, assuming that

15

Smith can establish a prima facie case, IVM must offer a legitimate, non-discriminatory reason for the pay disparity. *Lewis*, 918 F.3d at 1221 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

As with the EPA claim, IVM has established that Craig considered Smith's and Farmer's prior pay and experience within the herbicide manufacturing industry (in Smith's case, none) in determining their rates of pay as parts managers. These are sufficient legitimate, non-discriminatory reasons for the pay disparity. *See Miranda*, 975 F.2d at 1528 (EPA affirmative defenses are applicable to Title VII claims); *Irby*, 44 F.3d at 955. Therefore, the burden shifts to Smith to show these reasons were pretextual. *See Lewis*, 918 F.3d at 1221.

A reason is pretextual only if it is shown both that it is false and the true reason for the employment decision is discrimination. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007). In other words, Smith must show that a discriminatory reason more likely than not motivated IVM to pay her less, or to pay Farmer more. *See Miranda*, 975 F.2d at 1529. She must "meet [the proffered] reason head on and rebut it" by not "simply quarreling with the wisdom of that reason," but by showing the employer "[was] in fact motivated by [gender]." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal citations omitted). The Eleventh Circuit has explained that "unfair treatment, absent discrimination based on [membership in a protected class], is *not*

an unlawful employment practice under Title VII. *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

As with her EPA claim, Smith does not directly address pretext other than through a conclusory sentence in her brief opposing summary judgment. Instead, Smith merely disputes that Craig had an adequate basis to conclude that her prior experience was not comparable to Farmer's prior experience at NorStar. But again, Smith's factual contention is unavailing as she does not show that discrimination was the real reason for the pay disparity. Even though Craig did not discuss Smith's prior experience directly with her, nothing in the record suggests that IVM was motivated to pay Smith less than Farmer based on sex. And Smith cannot succeed in rebutting IVM's proffered reason by merely quarreling with the wisdom of IVM's decision to place greater value on Farmer's years of industry experience and knowledge with a competitor than her non-industry experience. *See Chapman*, 229 F.3d at 1030. Simply put, a Title VII pay claim cannot find footing in a case such as this, especially where Smith does not factually rebut, or even challenge, IVM's assertion head on that Farmer had certain industry knowledge and experience that Smith did not have and that IVM had made Farmer a financial incentive offer to induce him to leave NorStar.

Since Smith has failed to offer sufficient satisfactory evidence showing that IVM's proffered reason for paying Farmer a higher hourly rate was motivated by

discriminatory animus based on Smith's gender, IVM is due summary judgment in its favor on Smith's Title VII claim.[4]

## CONCLUSION

Accordingly, it is ORDERED as follows:

(1)     Defendant's Motion for Summary Judgment (Doc. 24) is due to be and is hereby GRANTED; and

(2)     A separate judgment shall issue.

DONE this 3rd day of November, 2022.

        /s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

---

[4] In her brief opposing summary judgment, Smith also argued there is a triable issue of fact under the alternative "convincing mosaic" analysis. (Doc. 30 at 14–15.) Smith has presented no such mosaic, not even a close one.